In re John C. MOORE, Debtor.

Donald L. Dionne, Plaintiff,

v.

Ira B. Colvin, Defendant.

Bankruptcy No. 96–72494–CMS–7.
Adversary No. 1–03–70045.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

July 29, 2004.

William Dennis Schilling, Birmingham, AL, for Donald L. Dionne.

J. Paul Whitehurst, Northport, AL, for Ira B. Colvin.

### ORDER ON MOTION TO ALTER, AMEND, OR VACATE JUDGMENT

JAMES S. SLEDGE, Bankruptcy Judge.

This case came before the Court on June 29, 2004 on Defendant's Motion to Alter, Amend, or Vacate Judgment. (**Doc. Nos. 63, 68**). Upon consideration of the arguments presented by the parties at the hearing, the Court determined that Defendant's Motion was due to be granted.

Accordingly, the findings of fact and conclusions of law as stated in open court on May 4, 2004 are hereby amended. The following shall constitute the Court's amended findings of fact and conclusions of law:

### FINDINGS OF FACT

On November 21, 1994, John C. Moore, the Debtor in this case, filed a complaint against Indies House, Inc. and Southern Housing, Inc., in the Circuit Court of Pickens County, case number CV–1994–105. This state court action sought damages related to the purchase of a mobile home by Debtor. On or about June 30, 1995, Michael Smith withdrew as attorney for the Debtor in the state court action. On August 12, 1996, Ira B. Colvin, the Defendant, was substituted as Debtor's attorney in the state court action.

Debtor filed a Chapter 13 case on October 31, 1996, and did not list the state court action in the petition or schedules. The bankruptcy court entered an order confirming the Debtor's Chapter 13 plan on December 16, 1996, which provided for a payment of zero percent (0%) to allowed unsecured claims. The order also provided that: "(5) The property of the estate shall not vest in the debtor(s) until a discharge is granted under § 1328 or the case is dismissed. Debtor may not dispose of or place any lien upon any property without the consent of the Court."

On March 25, 1997, the jury in the state court action returned a verdict against Southern Housing for the sum of $75,000, less $2,750 previously paid by Indies House. Then on April 15, 1997, the Circuit Court of Pickens County entered a judgment in the amount of $75,000 in favor of the Debtor and against Southern Housing.

Southern Housing filed a motion for a judgment notwithstanding the verdict or for a new trial on April 24, 1997. Southern Housing argued, among other things, that the Debtor was judicially estopped from prosecuting the action because of the bankruptcy filing and failure to schedule the state court action as an asset. Southern Housing attached to its motion certified copies of the bankruptcy petition and the confirmation order. Upon receipt of Southern Housing's motion and attachments, Defendant learned that the Debtor had filed a petition for relief in Chapter 13.

The question of judicial estoppel and the ability of the Debtor to recover against Southern Housing was appealed to the Alabama Supreme Court, which rendered a decision on April 21, 2000. The Alabama Supreme Court held that the Debtor had standing to pursue the action against Southern Housing even though that action belonged to the bankruptcy estate.

Southern Housing then filing a motion for reconsideration to the Alabama Supreme Court. While a majority of the court denied reconsideration, the minority dissented and would have granted reconsideration based upon the analysis of *In re Tippins*, 221 B.R. 11 (Bankr.N.D.Ala. 1998), in which this Court held that causes of action that are property of the estate could be pursued only by the trustee, and not by the debtor.

Debtor made his final payment to the Chapter 13 Trustee on October 31, 2001. Fourteen days later, on November 14, Defendant negotiated a settlement with Southern Housing to cancel the judgment upon payment of the sum of $25,000. Subsequently, Defendant received $25,000 from Southern Housing. Defendant retained $10,000 and disbursed the remaining $15,000 to the Debtor.

At all times between October 31, 1996 and November 14, 2001, Debtor's case was pending under Chapter 13 in the Northern District of Alabama. On October 16, 2002, Debtor's case was converted to a proceeding under Chapter 7 and subsequently, the Plaintiff was appointed Trustee.

Defendant has never petitioned for court approval of his employment as counsel for the Debtor, never petitioned for court approval of his fees or reimbursement of expenses, and never sought court approval for the settlement of the matters handled by the Defendant as regards the state court lawsuit. Defendant admits that he did not have bankruptcy court authorization to pay any funds to the Debtor or accept any estate funds as a fee, and admits that the court is responsible for compensation to attorneys who handle bankruptcy cases. Defendant knew that the Debtor was in bankruptcy proceedings during the times as set out above.

Plaintiff seeks summary judgment alleging the following damages: (1) $10,000 of attorneys fees taken by Defendant from estate property; (2) $15,000 of estate property that Defendant disbursed to the Debtor; and (3) $10,000 in attorney's fees incurred in the prosecution of this adversary proceeding.

## CONCLUSIONS OF LAW

■ The first question before the Court is whether the decision of the Supreme Court of Alabama in *Ex parte Moore*, 793 So.2d 762 (Ala.2000), controls issues in this case. That court held that "Moore has standing to pursue the cause of action against Southern Housing, even though that cause of action belongs to the bankruptcy estate." *Id.* at 765.

The finding of *Ex parte Moore* is limited to the issue of whether the Debtor had standing, and do not reach the issue of whether or not settlement proceeds are property of the estate. Because neither

party in this case has challenged the Debtor's standing either to sue Southern Housing or to broker a settlement with it, the Alabama Supreme Court's analysis in *Ex parte Moore* is inapposite to the issues of this adversary proceeding. Since neither party seeks a review of the state court judgment or a determination of the issues before the Alabama Supreme Court in *Ex parte Moore*, this Court is not limited by the Rooker/Feldman abstention doctrine.[1]

*Property of the Estate After Confirmation*

The substance of this adversary proceeding focuses on whether the money received in settlement of the state court action between the Debtor, John Moore, and Southern Housing is property of the estate. The resolution of this question is complicated by several facts: (1) the state court action was not listed in the Debtor's Chapter 13 petition or schedules; (2) the Debtor's Chapter 13 plan was confirmed without disclosure of the state court action; (3) the Debtor's Chapter 13 plan did not provide for treatment of the asset; and (4) the Debtor received the settlement money after completion of his Chapter 13 plan.

■ Pursuant to 11 U.S.C. § 541(a)(1), the act of filing for bankruptcy relief under Chapter 13 creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." As the Eleventh Circuit has held, "[s]uch property includes causes of action belonging to the debtor at the commencement of the bankruptcy case." *Parker v. Wendy's Intern., Inc.,*

365 F.3d 1268, 1272 (11th Cir.2004). While the language of *Parker* uses the term "cause of action", that case involved a pending action, so both causes of action and actions are interests that become property of the estate upon the commencement of a bankruptcy case.[2]

■ Here, the pending state court action unquestionably became property of the estate under § 541(a)(1) once the Debtor filed a petition for relief. *See e.g., Parker,* 365 F.3d at 1272 (finding that a pending action for discrimination became estate property once the debtor filed a petition for bankruptcy relief). The question to be answered is whether, upon confirmation of the Debtor's plan, the lawsuit remained property of the estate or vested in the Debtor. The analysis of this question goes to a problem that has plagued courts for some time-that is, how is the tension between 11 U.S.C. §§ 1306 & 1327 to be resolved?

Section 1306 provides:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is

1. Even had the parties challenged the Alabama Supreme Court's holding, the Rooker/Feldman doctrine would not have precluded review by the Court. As the United States Supreme Court has held, the Rooker/Feldman doctrine precludes federal review by district courts only when the state court judgment is challenged by a party to the state court action. *Johnson v. De Grandy,* 512 U.S. 997,

1005, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). Here, neither John Moore nor Southern Housing is a party to this adversary proceeding, so the Rooker/Feldman doctrine would not apply.

2. This distinction is important as a cause of action and an action refer to different types of interests.

closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Section 1306 defines property of the estate, and courts have interpreted this statute to mean that all property of the estate retains that status until dismissal, closing or conversion of the case. *In re Aneiro,* 72 B.R. 424, 429 (Bankr.S.D.Cal.1987). However, this reasoning appears to disregard the language of § 1327(b), which provides, "Except as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

Together, §§ 1306 & 1327 create a tension with respect to the effect of plan confirmation upon property of the estate. On the one hand, § 1306 defines property of the estate without regard to confirmation, only considering dismissal, closing or conversion. On the other hand, § 1327 appears to divide the estate upon plan confirmation. In determining what constitutes property of the estate after confirmation, courts have used three theories: (1) the estate termination approach; (2) the estate preservation approach; and (3) the estate transformation approach. *Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340 (11th Cir.2000).

Under the estate termination approach, courts have concluded that confirmation terminates the estate, and all property in the estate vests in the debtor. *See In re Toth,* 193 B.R. 992, 996 (Bankr.N.D.Ga. 1996). Under the estate preservation approach, courts find that all property remains property of the estate until discharge, dismissal, or conversion. *See In re Kolenda,* 212 B.R. 851 (W.D.Mich.1997). The third theory, the estate transforma-

tion approach, takes the middle ground between the first two interpretations, and is the theory that the Eleventh Circuit adopted.

In *Telfair v. First Union Mortgage Corp.,* the Eleventh Circuit interpreted §§ 1306(a)(2), 1327(b) "to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." 216 F.3d at 1340. Consequently, courts following *Telfair* have determined that, upon plan confirmation, all property of the estate vests in the debtor except for that property which is "necessary to the fulfillment of the plan." *Fleetwood Homes of Georgia v. Morrison,* 263 B.R. 646 (S.D.Ga.2000).

As courts have noted, this analysis is necessary to resolve the incongruous language of §§ 1306 & 1327. *See Telfair,* 216 F.3d at 1340; *Morrison,* 263 B.R. at 651 ("Because reading these different provisions does not yield a clear directive as to what property is property of the estate, several courts have attempted to resolve this apparent inconsistency in the Code."). While the Eleventh Circuit has not expressly held that the estate transformation approach applies to all Chapter 13 cases, Defendant urges the Court to find that it does. Because the estate transformation approach is a tool of statutory interpretation to resolve the tension between §§ 1306 & 1327, it cannot apply in cases where those two Code sections are not in conflict.

The source of the tension between the two Code sections in question arise from the latter half of § 1327(b) which states, "confirmation of a plan vests all of the property of the estate in the debtor." However, § 1327(b) contains a conditional

clause—"Except as otherwise provided in the plan or the order confirming the plan". This clause clearly reserves in the bankruptcy court the power to determine when property of the estate shall vest in the debtor, so the latter half of § 1327(b) works as a gap-filler for when the confirmation order or the plan does not treat this issue. Consequently, when the confirmation order or bankruptcy plan vests the property of the estate in the debtor only upon closing or dismissal of the case, there is no tension between the statutes. This is the situation in this case.

The Debtor's Chapter 13 plan was confirmed by order dated December 16, 1996. The order states: "(5) The property of the estate shall not vest in the debtor(s) until a discharge is granted under § 1328 or the case is dismissed. Debtor may not dispose of or place any lien upon any property without the consent of the Court." Because the confirmation order "otherwise provide[s]", the latter half of § 1327(b) is negated. When the language of the confirmation order clearly states when property of the estate vests in the debtor, there is no conflict between § 1327 and § 1306; thus, there is no tension that requires resolution through application of the estate transformation approach. This language distinguishes the facts of this case from those in *Telfair*. The analysis of *Telfair* is, therefore, not applicable in this case.

Concluding that the state court action is property of the estate that did not vest in the Debtor upon confirmation of the Chapter 13 plan does not completely resolve the issues of this case. The question that lingers is whether the state court action nonetheless vested in the Debtor on October 31, 2001, when the Debtor made his final payment to the Trustee.

*Undisclosed Assets Remain Property of the Estate After Discharge*

■ As addressed above, the confirmation order in this case decreed that the property of the estate shall vest in the debtor only upon discharge or dismissal of this case. Because there is no evidence showing that the Debtor had received a discharge or dismissal prior to receipt of the settlement proceeds, that money remained property of the estate. While the Debtor made his final payment to the Trustee on October 31, 2001, completion of plan payments is not the same as dismissal or discharge. Even if the Debtor had received a discharge, the settlement money would still have remained property of the estate pursuant to 11 U.S.C. § 554.

Important to the Court's consideration of this issue is the fact that the state court action was not listed in the Debtor's petition or schedules, nor in any amended schedules. When an asset of a debtor's is not disclosed to the trustee, that asset is never administered by the trustee. This circumstance invokes § 554(d), which states "[u]nless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." On the other hand, § 554(c) states that "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." Paragraph 5 of the Confirmation Order addresses the discretion afforded in § 1327(b). When read with § 554(d), this paragraph is not an exercise of discretion to counter the default in § 554(d).

Here, because the state court action was not disclosed to the Trustee, the asset was neither abandoned nor administered. Consequently, the fact that Southern Housing disbursed the settlement proceeds to the Debtor after completion of the

Debtor's plan payments is irrelevant. Failure to disclose the asset prevented the Trustee from administering or abandoning that asset. While § 554(c) decrees that unadministered property is abandoned and administered upon closing of a case, that statute requires that the "property [be] scheduled under section 521(1)." Since the state court action was never scheduled, § 554(c) does not apply. Therefore, pursuant to § 554(d), the state court action remained property of the estate even after Debtor's bankruptcy case was closed.

*Authority to Dispose of Property of the Estate for Attorney's Fees*

Having concluded that the state court action and the settlement proceeds remained property of the estate at all times in question, the Court must now determine whether the Debtor or the Defendant had the authority to dispose of the settlement proceeds to pay attorney's fees.

■ Under 11 U.S.C. § 327(a), "the trustee, with the court's approval, may employ one or more attorneys, ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title". With respect to attorneys hired by a debtor, the Supreme Court recently held that, "the statute authorizes an award of compensation to one of three types of persons: trustees, examiners, and § 327 professional persons. A debtor's attorney not engaged as provided by § 327 is simply not included within the class of persons eligible for compensation." *Lamie v. U.S. Trustee,* —— U.S. ——, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004).

■ Additionally, this Court has held that "the Code sets out specific rules for professionals to comply with in order to be compensated. Absent compliance with the Code and Rules, an attorney has no 'absolute right' to an award of compensation." *In re Federal Roofing Co., Inc.,* 205 B.R. 638, 644 (Bankr.N.D.Ala.1996) (citation omitted). Thus, from the plain language of the statute and from the cases interpreting the applicability of that statute, only those attorneys who are employed pursuant to § 327 may receive compensation from the estate.

■ In this case, Defendant received $25,000 from Southern Housing, which was property of the estate. Defendant retained $10,000 as compensation and gave the remainder to the Debtor. This was an improper disposal of property of the estate, paying an unapproved attorney. "In the absence of compliance with the Code and Rules, the Court believes that where fees have been paid to an unapproved attorney, the return of the compensation is the most appropriate remedy." *In re Federal Roofing Co., Inc.,* 205 B.R. 638, 644 (Bankr.N.D.Ala.1996). Therefore, the Court finds that Defendant received improper compensation from the estate, being an unapproved attorney, and that amount of $10,000 must be returned to the estate.

*Turnover of Estate Property*

■ The Trustee seeks to recover the full amount of the settlement proceeds by making a claim for turnover pursuant to 11 U.S.C. § 542(a). To satisfy the requirements for turnover under § 542(a), "the Trustee is required to prove that: 1) during the case; 2) an entity other than a custodian 3) was in possession, custody or control; 4) of property that the trustee could use, sell or lease; 5) that such property is not of inconsequential value or benefit to the estate." *In re Patton,* 200 B.R. 172, 177 (Bankr.N.D.Ohio 1996).

The first element is easily satisfied. The Debtor's bankruptcy case was pending

during all relevant times-specifically, when Southern Housing paid the $25,000 in settlement of the Debtor's action against it on November 14, 2001, the Debtor's Chapter 13 case was still pending.

Consideration of the second element requires the Court to determine whether Defendant qualifies as a custodian. The Code defines "custodian" as:

(A) receiver or trustee of any property of the debtor, appointed in a case or proceeding not under this title;

(B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;

11 U.S.C. § 101(11).

From the evidence presented, the Court must conclude that Defendant was not a custodian for the purposes of § 542(a). Defendant was acting solely as Debtor's legal counsel in a state court action, and not in any capacity as an agent for the Debtor or Debtor's creditors as described in § 101(11).

The third element is also easily satisfied, as the parties do not contest the fact that Southern Housing paid the settlement proceeds to Defendant, and that Defendant then disbursed those funds to himself and to the Debtor. These facts plainly show that Defendant maintained possession, custody and control over the settlement proceeds.

The fourth and fifth elements inquire as to the nature of the property in question and its value or benefit to the estate. Certainly, the settlement money of $25,000, is "property that the trustee could use, sell or lease" and "is not of inconsequential value or benefit to the estate".

Since all five elements are satisfied, the Trustee is entitled to relief under § 542(a). Therefore, Defendant is liable for the full $25,000 of the settlement proceeds. *See In re Cooper,* 263 B.R. 835, 838 (Bankr. S.D.Ohio 2001) ("Based on the foregoing analysis, this Court concludes that defendant Irwin is liable, jointly and severally with the debtor, for the full value of the settlement proceeds under § 542(a).").

*Judicial Estoppel*

The final issue before the Court is a determination of whether the Chapter 7 Trustee is judicially estopped from pursuing the claims in this adversary proceeding.

Subsequent to the decision of the Alabama Supreme Court in *Ex parte Moore,* the Eleventh Circuit held in *De Leon v. Comcar Indus., Inc.,* 321 F.3d 1289 (11th Cir.2003) that the application of judicial estoppel is the same in Chapter 13 as it is in Chapter 7, and therefore the analysis of *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282 (11th Cir.2002) controls in Chapter 13 just as it does in Chapter 7.

In facts similar to the facts of this case, the Eleventh Circuit in *Barger v. City of Cartersville,* 348 F.3d 1289 (11th Cir.2003) followed the analysis of *De Leon* and *Burnes* and concluded that the debtor is judicially estopped from proceeding in the state court action when the schedules do not include the asset of the state court action and that asset has not been administered by the Chapter 7 trustee.

Then the Eleventh Circuit went on to apply Rule 25(c) of the Rules of Civil Procedure to restrict the trustee's rights and interest in the property of the estate based on the actions taken by the debtor. Under this analysis, the Eleventh Circuit failed to

consider that on the petition date the debtor lost the status of the real party in interest with regard to the asset and it became property of the estate. The trustee thereafter was the sole party in interest with regard to the asset, and any actions by the debtor after the petition date, when the debtor was no longer the real party in interest, would be void as a violation of section 362 and therefore could not become the basis of a defense against the trustee.

Recently, the Eleventh Circuit considered *Parker v. Wendy's Intern., Inc.*, 365 F.3d 1268, 1272 (11th Cir.2004), where the debtor failed to schedule an asset; however, there was a very significant difference. Whereas in all of the above cases the defendant in the state court action won the race to the courthouse door and filed a motion for relief asserting judicial estoppel, in *Parker*, the debtor won the race to the courthouse door and filed a motion to reopen and amend the schedules. The motion to reopen was granted and the trustee was reappointed.

The trustee then filed a motion to intervene in the state court action, which was granted. Thereafter, the defendant in the state court action filed the motion to dismiss based upon judicial estoppel. The trustee argued to the trial court and to the Court of Appeals that the trustee's rights and position should be considered separately from the debtor's. That argument was rejected by the trial court and by the Eleventh Circuit in its first opinion. But, on April 15, 2004, the Circuit Court vacated its first opinion and issued a new opinion in which the court held that the trustee's rights should be considered separately from the debtor's. The court held that at the time of the filing of the petition the trustee had become the exclusive real party in interest to the property of the estate; thus, any action by the debtor

thereafter would be ineffectual to alter the rights of the trustee. Those subsequent actions, which could create the defense of judicial estoppel, could only be applicable to any rights or interest of the debtor that may exist post-petition.

Because the trustee is considered independent and separate from the debtor, judicial estoppel did not apply, as the trustee made no inconsistent positions under oath that were intended to make a mockery of the judicial process.

*Attorney's Fees*

As for the relief requested in the motion by the trustee for an award of attorney's fees, the Court finds that an award of attorney's fees is not applicable here. In this case, the issue of the right of the trustee for the demand to be honored was clouded by the decision of the Alabama Supreme Court and by Eleventh Circuit case law. The request for fees on top of the property of the estate sought to be recovered is denied.

*Prejudgment Interest*

The Trustee also requests prejudgment interest. The Court finds that prejudgment interest from the date of demand would be appropriate here to fully compensate the Trustee. *See In re Patton*, 200 B.R. 172, 177 (Bankr.N.D.Ohio 1996). However, the Trustee presented no evidence as to when a demand was made on the Defendant, if at all. Consequently, the Court cannot award any prejudgment interest in this adversary proceeding.

Accordingly, upon the foregoing, and for good cause found;

IT IS ORDERED, ADJUDGED, AND **DECREED** that Defendant's Motion to Alter, Amend, or Vacate Judgment be and is hereby **GRANTED**. The Order dated May 27, 2004, and the findings of fact and conclusions of law as stated in open court

on May 4, 2004 are hereby **AMENDED** as set forth above. Summary judgment is granted and judgment is entered in favor of the Plaintiff and against the Defendant for $25,000.

**IT IS FURTHER ORDERED AND DIRECTED** that the Clerk of this Court shall send a copy of this order by means of the Bankruptcy Noticing Center to each of the following (which shall be sufficient service and notice thereof): all parties in interest.