**Joseph C. CANTERBURY, Plaintiff,**

v.

**FEDERAL–MOGUL IGNITION CO., Defendant.**

**No. 3:06–cv–00044.**

United States District Court,
S.D. Iowa,
Davenport Division.

April 16, 2007.

Catherine M. Drexler, Gordon R. Fischer, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, IA, for Plaintiff.

Martha L. Shaff, Betty Neuman & McMahon, LLP, Davenport, IA, Robert W. Stewart, Lowenbaum Partnership LLC, Clayton, MO, for Defendant.

## ORDER ON MOTIONS

PRATT, Chief Judge.

Before the Court is Defendant's First Motion for Summary Judgment (Clerk's No. 42), filed November 29, 2006. Plaintiff filed a resistance to the motion (Clerk's No. 54) and Defendant replied (Clerk's No. 56). The matter is fully submitted.

## I. FACTUAL BACKGROUND

Joseph Canterbury ("Canterbury") filed the present action on September 12, 2005, in the Iowa District Court in and for Des Moines County, Iowa. Defendant removed the matter on October 11, 2005. Jurisdiction is proper under both 28 U.S.C. § 1331 and § 1332.

Plaintiff's Complaint alleges that he commenced employment with Federal–Mogul on October 11, 1999 as a metal working supply clerk. During the course of his employment, Plaintiff performed his job to the best of his abilities, never receiving any oral or written disciplinary warning during his entire employ. Eventually, Plaintiff received a promotion to the position of Pincell Suros Operator. Plaintiff is a Type II diabetic. On February 14, 2005, he was diagnosed with pneumonia and bronchitis and was absent from work from February 15–21, 2005, due to his illness and the side effects that illness imposed on his diabetes. Plaintiff notified his employer of his absences in accordance with Federal Mogul's absence policy, but was terminated on February 22, 2005. Plaintiff's Complaint asserts causes of action under two federal statutes, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq., and a state claim under the Iowa Civil Rights Act ("ICRA").

Approximately two months after Plaintiff's discharge, on April 29, 2005, he filed a Voluntary Chapter 7 Petition for Bankruptcy. Plaintiff was represented in the Bankruptcy proceedings by Steven Hahn. On May 5, 2005, Plaintiff hired Gordon Fischer to represent him in bringing the present claims against Defendant. On May 18, 2005, Plaintiff filed a Charge of Discrimination with the Iowa Civil Rights Commission ("ICRC"). Though Plaintiff never reported during the administration of his bankruptcy case that he had claims against Defendant, he was granted a discharge in the bankruptcy on July 26, 2005. Shortly thereafter, on September 8, 2005, Plaintiff was issued a Right to Sue letter by the ICRC. As noted, Plaintiff filed his Complaint in the present action in state court on September 12, 2005.

Plaintiff was served by Defendant with interrogatories on March 8, 2006. In response to a question regarding other legal proceedings, Plaintiff replied that he was not a party to any other legal proceedings, despite the fact that he had recently been a party in the bankruptcy. Pursuant to a scheduling order filed in this case, the last day for Motions for Leave to Amend the Pleadings and for Leave to Add Parties was June 1, 2006. On November 2, 2006, however, Defendant learned that Plaintiff had failed to disclose his Chapter 7 Bankruptcy in response to Defendant's interrogatories. Counsel for Defendant e-mailed Gordon Fischer regarding this matter. On November 17, 2006, Plaintiff's Bankruptcy case was reopened after the Trustee was "advised that there is a previously undisclosed non-scheduled asset in the nature of Debtors' cause of action against Federal Mogul Ignition." *See* Case No. 05–03088–lmj7, Clerk's No. 14 (B.R.Iowa S.D.). On November 27, 2006, the Bankruptcy Trustee, Wesley Huisinga, requested that the Bankruptcy Court permit him to employ Gordon Fischer to prosecute Plaintiff's claims against Defendant on behalf of the Trustee. *See id.* Clerk's No. 19. The request was granted by the Bankruptcy Court on December 29, 2006. *Id.* Clerk's No. 22.

After the request by the Trustee to employ Mr. Fischer, but before the request was granted, Defendant filed the present Motion for Summary Judgment, asserting that Plaintiff lacks standing to assert all causes of action raised in the Complaint, and asserting that Plaintiff is judicially

estopped from presenting the present claims to the Court because he failed to schedule such claims in his Bankruptcy proceedings. On January 16, 2007, Plaintiff filed a resistance to Defendant's Motion for Summary Judgment. On the same date, Plaintiff filed a Motion to Amend Complaint to Substitute the Real Party in Interest Under Rule 17 (Clerk's No. 53), seeking to amend the Complaint to substitute Trustee Huisinga as the real party in interest in the case. Defendant filed a resistance (Clerk's No. 57) to Plaintiff's request to amend, and Chief Magistrate Judge Thomas Shields held a hearing on the motion on March 9, 2007. *See* Clerk's No. 81. To date, Judge Shields has not ruled on the pending Motion to Amend.

## II. SUMMARY JUDGMENT

Summary judgment has a special place in civil litigation. The device "has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). In operation, the role of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required. *See id.; see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990). "[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir.1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir.1975)). The purpose of the rule is not " 'to cut litigants off from their right to trial by jury if they really have issues to

try,' " *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried." *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.1976) (citing *Lyons v. Board of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The precise standard for granting summary judgment is well-established and oft-repeated: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir.1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.").

It is the unusual case where the party shouldering the burden of proof prevails on a summary judgment motion. *See Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir.1998) ("Summary judgments in favor of parties who have the burden of proof are rare, and rightly so.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is genuine issue for trial. *See* Fed. R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphasis in original). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### III. LAW AND ANALYSIS

Defendant's First Motion for Summary Judgment argues that Plaintiff's Complaint should be dismissed because he has, at all times, lacked standing to bring his claims before the Court. Defendant first argues that Plaintiff lacks standing to assert his present claims because the Bankruptcy Trustee had exclusive standing to bring the cause of action.

The parties are in agreement that Plaintiff himself lacks standing to pursue his causes of action because he is not the real party in interest. When an individual files a petition under Chapter 7 of the Bankruptcy Code, an estate "comprised of ... all legal or equitable interests of the [D]ebtor in property as of the commencement of the [bankruptcy] case" is created. 11 U.S.C. § 541(a)(1). Included in the bankruptcy estate are causes of action and rights of recovery on legal claims, whether in pending litigation or not. *See In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir.1987) ("[I]t is clear that causes of action belonging to the debtor at the commencement of the case are included within the definition of property of the estate. Any of these actions that are unresolved at the time of filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or preservation of the estate.") (internal citations omitted). Nonetheless, Plaintiff contends that, pursuant to Federal Rule of Civil Procedure 17(a), the real party in interest is now the Trustee of the bankruptcy estate, Wesley Huisinga. In accordance with this position, Plaintiff filed a Motion to Amend Complaint to Substitute the Real Party in Interest under Rule 17. *See* Clerk's No. 53.

Defendant counters that because Plaintiff failed to list his present claims in the bankruptcy schedules, and because Plaintiff did not amend his bankruptcy schedules despite being terminated from his employment two months prior to filing bankruptcy, the present action must be dismissed. *See e.g., Harris v. St. Louis Univ.*, 114 B.R. 647 (E.D.Mo.1990) (cause of action accrues on the date of discharge).

Defendant cites several cases with similar fact patterns in support of this proposition. In *Harris*, the plaintiff was terminated from her employment on July 13, 1987. 114 B.R. 647, 647 (E.D.Mo.1990). She filed for Chapter 7 bankruptcy on October 6, 1987, but did not schedule any claims against the defendant, despite having filled out an EEOC intake questionnaire two days after her termination wherein she claimed that she was unlawfully discharged. *Id.* On July 1, 1988, the plaintiff filed a formal complaint with the EEOC, alleging age and sex discrimination. *Id.* On July 13, 1989, she filed a two count complaint claiming discharge in violation of Title VII and the Age Discrimination in Employment Act ("ADEA"). *Id.* The defendant argued that plaintiff lacked standing to pursue her claims because she failed to list the discrimination claims in her bankruptcy schedules. The court agreed and dismissed the plaintiff's complaint for lack of standing, finding that the discrimination claims became part of the bankruptcy estate when the plaintiff filed her bankruptcy petition and that they had never been administered or abandoned by the estate. *Id.* at 649. "The cause of action remain[ed] part of plaintiff's [bankruptcy] estate. Therefore, the trustee in bankruptcy, and not the plaintiff, has standing to sue." *Id.; see also Anderson v. Acme Mkts., Inc.*, 287 B.R. 624, 632 (E.D.Pa. 2002) (dismissing claim for lack of standing where plaintiff failed to schedule his causes of action against defendants in Chapter 7 bankruptcy proceedings instituted after the cause of action accrued); *Byrd v. Potter*, 306 B.R. 559, 562–63 (N.D.Miss.2002) (same).

The Court agrees that Plaintiff's claims against the Defendant are the sole property of the bankruptcy estate and may only be pursued by the bankruptcy Trustee. Plaintiff lacks standing to pursue the claims and summary judgment in favor of the Defendant *as against* Mr. Canterbury as Plaintiff is appropriate.

The determination that Mr. Canterbury, himself, lacks standing to pursue the present action does not resolve the matter of whether the bankruptcy Trustee should be permitted to be substituted as the real party in interest. Because standing is a prerequisite for subject matter jurisdiction and is determined on the date the case is filed, Defendant urges that there can be no case in which to substitute the Trustee as the real party in interest because this Court never acquired subject matter jurisdiction over the case on account of Mr. Canterbury's lack of standing.

■ Defendant is correct that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989)). Nonetheless, the Supreme Court has recognized that "[l]ike most general principles, ... this one is susceptible to exceptions...." *See Newman–Green*, 490 U.S. at 830, 109 S.Ct. 2218. One such exception is Federal Rule of Civil Procedure 21, which permits parties to be added or dropped "by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R.Civ.P. 21. Indeed, in *Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), the Alaska Fishermen's Union and its Secretary–Treasurer, on behalf of thousands of union members, brought an action to enjoin the Alaska Tax Commissioner from collecting a licensing fee from nonresidents. 342 U.S. 415, 416–17, 72 S.Ct. 428, 96 L.Ed. 458 (1952). The Tax Commissioner asserted for the first time before the Supreme Court that the

union and its Secretary–Treasurer lacked standing to maintain the suit. *Id.* The Court permitted two union members who were nonresidents of Alaska (and who clearly had standing to maintain the suit) to be added as plaintiffs in the matter pursuant to Rule 21 and declined to further address the standing issue. The Court found that allowing the amendment to the named plaintiffs "can in no wise embarrass the defendant. Nor would their earlier joinder have in any way affected the course of the litigation. To dismiss the present petition and require the new plaintiffs to start over in the District Court would entail needless waste and runs counter to effective judicial administration." *Id.* at 417, 72 S.Ct. 428.

■ This Court concludes that Rule 21 permits it to substitute the bankruptcy Trustee for Mr. Canterbury in the present action. Additionally, Rule 17(a) permits the substitution to be made. Rule 17(a) provides as follows:

Every action shall be prosecuted in the name of the real party in interest.... No action .shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed.R.Civ.P. 17(a). The Advisory Committee Notes make clear that the purpose of the rule is to "prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Defendant argues that Plaintiff intentionally concealed the fact of his bankruptcy from it and intentionally concealed the present action from the bankruptcy Trustee. This conceal-

ment, according to Defendant, means that the Court cannot conclude that an "understandable mistake" has been made, such that substitution under Rule 17(a) should be permitted. The Court disagrees.

■ As the parties concede, when Mr. Canterbury filed his Bankruptcy petition, his rights in the present claims were extinguished and the claims became the property of the bankruptcy estate. Mr. Canterbury could never possess any further interest in the claims unless and until the bankruptcy Trustee abandoned the claims as property of the estate. *See* 11 U.S.C. § 554(a)-(c); *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 525–26 (8th Cir.1991) (failure to list an interest on bankruptcy schedules leaves that interest in the bankruptcy estate). This has not happened. Indeed, the bankruptcy Trustee, upon learning of the present litigation, quickly sought to reopen the bankruptcy case and took steps to ensure the ongoing vitality of the present claims.

Although general bankruptcy law establishes that the trustee does not have any more rights than the debtor has, *Bank of Marin v. England,* 385 U.S. 99, 101, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966) ("The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt but for the filing of the petition."); *In re Halabi,* 184 F.3d 1335, 1337 (11th Cir.1999), any post-petition conduct by [the debtor], including failure to disclose an asset, does not relate to the merits of the discrimination claim. This is because the instant the bankruptcy petition was filed, [the debtor's] claim against [the defendant] became property of the estate under section 541 and [the Trustee] became the real party in interest. At that point, the debtor ceased to have an interest in the discrimination claim, unless

and until the trustee abandoned it. Both *Bank of Marin* and *In re Halabi* are readily distinguishable since those cases deal with pre-petition defenses and counterclaims to a cause of action that would have been applicable to the debtor had no bankruptcy case been filed.

*Parker v. Wendy's Int'l, Inc.,* 365 F.3d 1268, 1272 n. 3 (11th Cir.2004).

As in *Parker,* Canterbury's actions in filing the present suit and in failing to disclose it to the Trustee, and in failing to disclose the bankruptcy proceedings to the Defendant, were his own post-petition actions and should not be attributed to the Trustee as the proper party in interest. Presumably, if the Court were to dismiss the present action in its entirety, the Trustee would refile Canterbury's claims against Defendant, but the action would be time-barred by applicable statutes of limitations. Such a result would be less than equitable, particularly in light of the fact that the Trustee was not aware of the claims until after the statute of limitations had expired. Refusing to permit the substitution of the Trustee as the real party in interest, then, would represent a significant detriment to the Trustee and, more importantly, to Canterbury's creditors, while at the same time permitting Defendant to receive a possible windfall by virtue of not being held accountable for its allegedly illegal actions. Accordingly, the Court concludes that the interests of justice are best served by permitting the substitution of the Trustee for Canterbury in the present action. The Court further concludes that both Federal Rules of Civil Procedure 21 and 17(a) authorize the substitution.

Defendant next contends that judicial estoppel should be applied to bar the present action from going forward. The Eighth Circuit Court of Appeals has discussed the doctrine of judicial estoppel at length:

The doctrine of judicial estoppel "protects the integrity of the judicial process." *Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 738 n. 6 (8th Cir.1987). A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court. *Id.* "Judicial estoppel prevents a person who states facts under oath during the course of a trial from denying those facts in a second suit, even though the parties in the second suit may not be the same as those in the first." *Monterey Dev. Corp. v. Lawyer's Title Ins. Corp.,* 4 F.3d 605, 609 (8th Cir.1993). Therefore, a party that takes a certain position in a legal proceeding, "and succeeds in maintaining that position," is prohibited from thereafter assuming a contrary position "simply because his interests have changed," especially if doing so prejudices the party "who acquiesced in the position formerly taken by him." *New Hampshire v. Maine,* 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (internal quotations and citations omitted).

"The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750, 121 S.Ct. 1808, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968. Three factors, while not "an exhaustive formula for determining the applicability of judicial estoppel," aid a court in determining whether to apply the doctrine. *Id.* at 751, 121 S.Ct. 1808. The three factors are as follows:

First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a

later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 751, 121 S.Ct. 1808 (internal quotations and citations omitted).

*Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1047 (8th Cir.2006).

■ Defendant urges that the three *New Hampshire* factors are easily satisfied in this case. First, Defendant argues, Canterbury clearly took inconsistent positions in the bankruptcy proceedings and in the present proceedings when he failed to amend his bankruptcy schedules to include his claims against Defendant. *Id.* (first *New Hampshire* element satisfied when debtor claimed in bankruptcy proceedings that no civil rights claims existed and never amended schedules to reflect that such claims did exist). Second, the Bankruptcy Court in Canterbury's case discharged his debt prior to reopening the matter to permit administration of the present claims. *See id.* (noting that a Chapter 7 "no asset bankruptcy discharge" is sufficient to satisfy the second *New Hampshire* element, even though the bankruptcy is later reopened). Third and lastly, Canterbury: 1) blames his need for bankruptcy on the Defendant; 2) had knowledge of his undisclosed claim; and 3) engaged in administrative activity concerning his claim. Despite these facts, however, Canterbury didn't amend his bankruptcy schedules accordingly. *Id.* (discussing factors that would satisfy the third *New Hampshire* element). On the record before it, the Court agrees that *Canterbury* is judicially estopped from pursuing the present claims, or from benefitting in any way from them.

The matter of whether the judicial estoppel against Canterbury applies with equal force to the bankruptcy Trustee requires a different conclusion, however. In most of the cases cited by Defendant in support of their request for judicial estoppel, the estoppel was sought and granted against the *debtor,* not against the *trustee. See Stallings,* 447 F.3d at 1053 (bankruptcy *debtor* judicially estopped from pursuing claims that he didn't list on bankruptcy schedules); *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 784–85 (9th Cir.2001) ("The rationale for [invoking judicial estoppel in cases where a party asserts a claim that he failed to schedule in his bankruptcy] is that the integrity of the bankruptcy system depends on full and honest disclosure by *debtors* of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims *for his own benefit* in a separate proceeding.") (internal citations omitted, emphasis added); *but see In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir.2004) (granting judicial estoppel against the debtor and declining to address the trustee's Rule 17(a) request to be substituted as the real party in interest without further explanation).

In *Parker,* discussed *supra,* and in two District Court cases in the Eighth Circuit, judicial estoppel claims against the *trustee* have been rejected. In *Martin v. U.S. Bank,* Case No. 4:04cv01527AGF, 2005 WL 3107722 (E.D.Mo. Nov.18, 2005), the plaintiff was terminated from her employment in December 1993, filed for bankruptcy in October 2004, and filed a civil rights suit against her former employer in November 2004. *Id.* at * 1. The plaintiff was granted a bankruptcy discharge in March 2005, and in May 2005, the civil

rights defendant moved for summary judgment on the bases of lack of standing and judicial estoppel. *Id.* Shortly after receiving the motion for summary judgment, the plaintiff attempted to amend her bankruptcy schedules and sought to have the bankruptcy trustee abandon the civil rights claims. *Id.* The bankruptcy trustee resisted abandoning the property and sought to intervene in the civil rights action, and to be substituted as the real party in interest. *Id.* at *2. The court found that a plaintiff's failure to list her claims against her employer in her bankruptcy schedules presented a situation ripe for the application of judicial estoppel. *Id.* at *4. Bearing in mind, however, that "judicial estoppel is an equitable remedy, whose purpose is to 'protect the integrity of the judicial process,'" the Court went on to conclude:

> [A]pplication of judicial estoppel in this case would thwart the actions taken by the bankruptcy court to permit the Trustee to administer the claim, while refusing either to require the Trustee to abandon the claim or to permit the debtors to assert an exemption related to the claim. Under these facts, it is difficult to see how an order foreclosing the claim in its entirety could be characterized as an act preserving the integrity of the judicial process. *See Aaron,* 65 Fed. Cl. at 32.

> Recognizing that the Plaintiff/debtor and the Trustee have separate identities, that the Plaintiff/debtor concealed the claim from the Trustee, and that the Trustee moved promptly to protect the estate's interests upon discovery of the claim, the Court believes that the equitable remedy of judicial estoppel should be applied here to preclude Plaintiff from recovering anything from this action, while allowing the Trustee to proceed on behalf of the bankruptcy estate for the benefit of the debtors' creditors. *See An–Tze Cheng,* 308 B.R. at 461 (citing *Hay v. First Interstate Bank of Kalis-*

*pell, N.A.,* 978 F.2d 555, 557 (9th Cir. 1992)); *see also In re Moore,* 312 B.R. 902, 910 (Bankr.N.D.Ala.2004) (trustee's actions independent and separate from debtor's).

*Id.* at *5.

A similar factual situation was presented in *Taylor v. Comcast Cablevision of Arkansas, Inc.,* 252 F.Supp.2d 793, 798 (E.D.Ark.2003). While the *Taylor* court hinged its refusal to apply the doctrine of judicial estoppel on the lack of evidence that the plaintiff intended to manipulate or deceive, it noted:

> Commentators have urged caution in applying the doctrine. "[C]ourts in which judicial estoppel is raised should be urged to consider the effect of dismissal upon creditors of the plaintiff and to analyze whether more appropriate remedies, other than dismissal of the litigation, are available in the bankruptcy court ... [C]ourts should not be too quick to deprive the bankruptcy court of its opportunity to decide whether reopening of a closed bankruptcy case would be beneficial to the bankruptcy estate and its creditors." *Brown,* at 227. In a supplement to Judge Brown's article, one commentator stated: "The better rule [than dismissal], and consistent with Rule 1009 of the Federal Rules of Bankruptcy Procedure, is that the debtor should be liberally allowed to amend the schedules. Further, the best interest of creditors should be a paramount consideration before dismissing the cause of action under the doctrine of judicial estoppel. The trustee should be substituted as the real-party-in-interest to protect the assets of the estate." Thomas E. Ray, *Judicial Estoppel in Chapters 7 and 13,* 21 Am. Bankr.Inst. J. 14, 21 (2002).

*Id.* at 798–99.

▆ Defendant argues that *Taylor* and *Martin* do not overrule *Stallings.* This is

certainly true, however, as noted *supra*, Stallings is factually distinguishable because the doctrine of judicial estoppel was applied against the *debtor* and not against the trustee. The Court finds the reasoning of *Parker, Taylor*, and *Martin* persuasive and adopts the reasoning contained in those rulings. *See also Anderson*, 287 B.R. at 632 (dismissing debtor for lack of standing, but dismissing the case "without prejudice to the right of the Trustee in Bankruptcy to be substituted as a party-plaintiff in the event the Bankruptcy Court reopens the bankruptcy proceedings"). While Mr. Canterbury lacks standing and is judicially estopped from pursuing claims against Defendant, the bankruptcy trustee is not. Indeed, to apply the doctrine of judicial estoppel to the Trustee would benefit only the Defendant, and at the risk of substantial harm to the creditors in the now-reopened bankruptcy proceedings.

## IV. CONCLUSION

For the reasons stated herein, Defendants First Motion for Summary Judgment (Clerk's No. 42) is GRANTED to the extent it seeks to bar Joseph Canterbury from personally pursuing or benefitting from the present action. The motion is DENIED to the extent it seeks to bar the Bankruptcy Trustee from pursuing the present action on behalf of the bankruptcy estate. Additionally, Plaintiff's Motion to Amend/Correct Complaint (Clerk's No. 53) is GRANTED. Pursuant to Federal Rules of Civil Procedure 17(a) and 21, Bankruptcy Trustee Wesley Huisinga is hereby substituted for Joseph Canterbury as the real party in interest in the above-captioned case.

IT IS SO ORDERED.