*Kevin Morton, Jr., et al. v. Cindy L. Schlotzhauer*
No. 72, September Term, 2015


**Civil Procedure – Motion to Alter or Amend Judgment – Standard of Appellate Review.** An appellate court reviews a circuit court's disposition of a motion to alter or amend a judgment in a case decided by the circuit court for abuse of discretion. However, a circuit court abuses its discretion if it applies incorrect legal principles. An appellate court applies a deferential standard of review to the extent that a circuit court's decision involves factfinding. To the extent that the circuit court's decision depends entirely on the application of legal principles, such as a decision to award summary judgment, the appellate court does not necessarily defer to the circuit court's decision. Maryland Rule 2-534.

**Civil Procedure – Standing – Effect of Plaintiff's Bankruptcy Proceeding on Standing to Assert Personal Injury Claim.** Plaintiff who failed to list a potential personal injury claim as an asset on her bankruptcy petition initially was divested of that claim under federal bankruptcy law as a result of the bankruptcy proceedings and lost standing to assert that claim, but her standing was restored after the bankruptcy case was re-opened, the bankruptcy schedules were amended to include the claim, and the bankruptcy court ruled, as a matter of federal bankruptcy law, that the claim was re-vested in the plaintiff retroactively as of the date the bankruptcy petition was filed. In a case in which the personal injury complaint was filed within the period of limitations, the bankruptcy case was promptly re-opened upon discovery of the standing issue, and no new cause of action or factual allegations were added to the complaint, there was no reason for a Maryland trial court not to recognize the retroactive re-vesting of the claim by the Bankruptcy Court for purposes of the State court action.

**Civil Procedure – Real Party in Interest – Relation Back.** If a claim asserted in a complaint actually belongs to a bankruptcy estate by virtue of the plaintiff's prior bankruptcy filing, the bankruptcy trustee is the real party in interest with respect to that claim. The circuit court should allow a reasonable opportunity for the bankruptcy trustee to be substituted as plaintiff pursuant to Maryland Rule 2-201. The bankruptcy trustee need not re-file the complaint and the substitution will relate back to the original filing of the complaint for purposes of the statute of limitations. If the claim is later re-vested in the original plaintiff, the same principles apply to permit substitution of the original plaintiff. Maryland Rule 2-201.

Circuit Court for Queen Anne's County
Case No. 17-C-12-017577
Argued: April 1, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 72

September Term, 2015

---

KEVIN MORTON, JR., ET AL.,

V.

CINDY L. SCHLOTZHAUER

---

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Rodowsky, Lawrence F. (Retired,
Specially Assigned),

JJ.

---

Opinion by McDonald, J.

---

Filed: August 19, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of the case while an
active member of this Court; after being
recalled pursuant to the Constitution, Article IV,
Section 3A, she also participated in the decision
and adoption of this opinion

This case is about the procedural and substantive effect that a bankruptcy proceeding may have on the prosecution of a personal injury claim in State court. Our disposition of this case is compelled by the respect we accord a decision of the federal Bankruptcy Court and by our own injunction to interpret our rules "to do justice between the parties."[1]

Bankruptcy allows one overcome by debt to obtain a discharge of debts and have, more or less, a fresh start. Part of the price that the debtor must pay is to detail the debtor's property interests in the bankruptcy case so that it can be determined what is available for distribution to creditors and what the debtor may retain. Among the property interests that must be listed are personal injury claims of the debtor, although such claims typically are exempted from the bankruptcy estate by operation of bankruptcy and Maryland law and, as a result, remain the debtor's property. Failure to list such a claim in the bankruptcy proceeding, however, means that it remains part of the bankruptcy estate.

Respondent Cindy L. Schlotzhauer was involved in a motor vehicle accident with Petitioner Kevin Morton, Jr., who was employed at the time by Petitioner Uni-Select USA, Inc. t/a Kunkel Service Company. Almost three years later, but within the pertinent statute of limitations, she brought this action against Mr. Morton and Uni-Select asserting that she had suffered personal injuries in the accident allegedly as a result of Mr. Morton's negligence in the course of his employment.

---

[1] *Miller v. Talbott*, 239 Md. 382, 390, 211 A.2d 741 (1965).

Between the time of the accident and the filing of this action, Ms. Schlotzhauer happened to file personal bankruptcy and was discharged from her debts. She neglected to list her (then) potential claim for personal injuries as an asset or as exempt property in her bankruptcy petition. It appears to be undisputed that this happened out of ignorance, rather than any deliberate effort to conceal the potential claim. By operation of bankruptcy law, her claim became the property of her bankruptcy estate.

When the prior bankruptcy proceeding came to light during discovery in this action, thus raising the question of Ms. Schlotzhauer's standing to litigate the claim, the parties began to shuttle back and forth between the Circuit Court and Bankruptcy Court in a race for relief from those tribunals. Mr. Morton and Uni-Select sought to have the Circuit Court dismiss the personal injury action for lack of standing on the ground that the claim did not belong to Ms. Schlotzhauer – a dismissal that would be a dead end for the claim, as the period of limitations had expired in the interim. Ms. Schlotzhauer sought to re-open the bankruptcy process to eliminate the standing question by having the claim exempted and restored to her or by joining the bankruptcy trustee as plaintiff in this action.

The race ended in a dead heat, more or less. The Bankruptcy Court granted Ms. Schlotzhauer's request to re-open and re-vested her with the claim – a decision it ultimately decided was retroactive to the filing of the bankruptcy petition. In a nearly simultaneous ruling, the Circuit Court, unaware of the Bankruptcy Court's action, awarded summary judgment to Mr. Morton and Uni-Select on the ground that Ms. Schlotzhauer lacked standing. Ms. Schlotzhauer informed the Circuit Court of the Bankruptcy Court's action

2

and asked it to reconsider its award of summary judgment. The Circuit Court declined to do so, without explanation.

The Court of Special Appeals reversed. It held that, even if Ms. Schlotzhauer was not the proper plaintiff under Maryland law at the time she filed her complaint, Maryland Rule 2-201 allows for substitution of the real party in interest – in this case, the bankruptcy trustee and ultimately Ms. Schlotzhauer herself when she was re-vested with the claim. That rule incorporates the doctrine of "relation back" and allows the real party in interest to prosecute an existing action without need to file a new complaint. In any event, the intermediate appellate court noted that the Bankruptcy Court's ruling re-vested Ms. Schlotzhauer with her claim as of a date well before the filing of her complaint and nullified the prior divestiture of that claim in the bankruptcy proceeding. Accordingly, Ms. Schlotzhauer was an appropriate plaintiff on a timely-filed complaint.

For the reasons detailed below, we agree with the Court of Special Appeals.

# I

# Background

## A.    *A Bankruptcy Primer*

To understand the unusual procedural path of this case it is helpful to make a brief excursion into bankruptcy law. Luckily for us, most of the applicable bankruptcy principles are not at issue. In its opinion in this case, the Court of Special Appeals provided an excellent summary, which we draw upon liberally as follows:

3

*Debtor's Obligation to List Property Interests*

When a person files for protection from creditors under federal bankruptcy law, all of the person's property, including personal injury claims, become the property of the bankruptcy estate. Those rights become the property of the estate even if the person intentionally, inadvertently, or innocently fails to disclose them to the trustee, the bankruptcy court, and creditors.

*Schlotzhauer v. Morton*, 224 Md. App. 72, 75-76, 119 A.3d 121 (2015) (citations omitted).

*Trustee's Rights over Property of Bankrupt Estate*

Generally, the bankruptcy trustee alone may assert the person's rights, including the right to pursue a tort claim for personal injuries, unless the trustee abandons the rights or the bankruptcy court declares them to be exempt from creditor claims. If the rights have not been abandoned or exempted, the bankruptcy trustee retains the sole right to assert them even after the bankruptcy court has closed the bankruptcy case and granted the debtor a discharge.

224 Md. App. at 76 (citations omitted).

*Exemption for Personal Injury Claims*

The debtor … must list all property that the debtor claims as exempt. A party in interest to the bankruptcy proceeding, in turn, may object to the debtor's claims for exemptions. If an interested party fails to object within

4

the time allowed, a claimed exemption will exclude the subject property from the estate.

Maryland residents can claim exemptions under state law, including an exemption "from execution on a judgment" that is payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings.

*Id.* at 88 (citations and quotations marks omitted).

*Discretion to Reopen Bankruptcy Case to Amend Schedules*

Debtors may amend or supplement their schedules as a matter of course before the bankruptcy case closes. In addition, the bankruptcy court has discretion to reopen a case to administer assets, to accord relief to the debtor, or for other cause. The bankruptcy court has discretion to permit a party to perform an act, such as the filing of amended asset schedules, even after the specified period in which the act is required or allowed to be done.

*Id.* at 88 (citations and quotation marks omitted).

**B.**   ***Facts and Procedural History***

*The Accident*

It is undisputed that, on January 4, 2010, Ms. Schlotzhauer was involved in an automobile collision in the parking lot of the Centreville post office with Mr. Morton while he was driving a pickup truck owned by his employer, Uni-Select. The details of that accident are unimportant to the resolution of the issues in this appeal. Suffice it to say, in the complaint that Ms. Schlotzhauer filed some years later to initiate this case, she alleged

5

that Mr. Morton was talking on a cell phone when he backed his truck into her car, resulting in various physical injuries to Ms. Schlotzhauer.

Shortly after the automobile accident, Ms. Schlotzhauer retained counsel, who resolved a claim for property damage to Ms. Schlotzhauer's car with Uni-Select's insurer and periodically corresponded with the insurer over the course of the next year and a half concerning her injuries, diagnosis, and treatment, evidently in anticipation of pursuing a personal injury claim. However, her counsel did not file suit until the end of 2012, shortly before the three-year statute of limitations would expire.[2]

*The Bankruptcy Case*

In the meantime, Ms. Schlotzhauer, with the assistance of a different attorney, had sought relief from various debts in the federal Bankruptcy Court. On October 6, 2010, she filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland.[3] On the schedules attached to her bankruptcy petition, Ms. Schlotzhauer did not list the potential personal injury claim arising from the January 4, 2010 accident as either an asset or as property claimed to be exempt.[4] On January 19, 2011, the Bankruptcy Court granted Ms. Schlotzhauer a discharge from her debts and closed the case.

---

[2] *See* Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §5-101.

[3] Ms. Schlotzhauer filed her petition under the name Cindy Lyles. She has since married and adopted her husband's surname.

[4] It appears to be undisputed that Ms. Schlotzhauer was unaware of the need to include the potential personal injury claim on the bankruptcy schedules. The lawyer who

6

*The Personal Injury Case*

On December 26, 2012, Ms. Schlotzhauer initiated this case by filing a complaint in the Circuit Court for Queen Anne's County against Mr. Morton and Uni-Select, seeking damages for her injuries. The complaint alleged that the accident was attributable to Mr. Morton's negligence and that he was operating his vehicle within the scope of his employment. Mr. Morton and Uni-Select (hereafter, collectively, "Uni-Select") answered the complaint with a general denial, as well as a number of affirmative defenses.

The parties pursued discovery. In response to an interrogatory, Ms. Schlotzhauer indicated that she had filed for bankruptcy in October 2010. In questioning by defense counsel during a subsequent deposition on July 31, 2013, it emerged that she had not listed her potential personal injury claim arising from the accident as an asset in her bankruptcy petition.

*A Question of Ms. Schlotzhauer's Standing*

On August 23, 2013, Uni-Select moved for summary judgment on the grounds that Ms. Schlotzhauer lacked standing to bring the claim because the cause of action had become property of the bankruptcy estate by the time she filed suit and that only the bankruptcy trustee had the right to pursue the claim. In response, Ms. Schlotzhauer filed an affidavit stating that she had been unaware of the need to include a potential personal injury claim on the schedules attached to her bankruptcy petition and that, upon realizing

---

filed the bankruptcy petition on her behalf was not aware of her (then) potential personal injury claim.

7

the need to do so, she had requested that her bankruptcy attorney re-open that case. Ms. Schlotzhauer also asked the Circuit Court to stay its proceedings, pending action by the Bankruptcy Court.

On October 22, 2013, the Circuit Court held a hearing on both Ms. Schlotzhauer's motion to stay the proceedings and Uni-Select's motion for summary judgment. The Circuit Court postponed ruling on either motion and indicated that it would hold both under advisement, pending developments in the Bankruptcy Court. The court subsequently issued an order stating that it would hold the motions *sub curia* for 30 days and scheduling a status conference for December 2013.

*Ms. Schlotzhauer Returns to Bankruptcy Court*

In the meantime, Ms. Schlotzhauer had filed a motion in the Bankruptcy Court on September 12, 2013, to re-open her bankruptcy case for the purpose of amending her petition to list the damages and lost wages related to her personal injury claim as exempt property.[5]

On October 23, 2013, the Bankruptcy Court granted Ms. Schlotzhauer's request to re-open her bankruptcy case. Ms. Schlotzhauer immediately filed amended schedules to her bankruptcy petition, listing her lost wages and personal injury claim as assets and as exempt property. She listed the value of her lost wages as $901 and the value of her

---

[5] Uni-Select sought to intervene in Ms. Schlotzhauer's bankruptcy case to oppose its re-opening. Although the Bankruptcy Court accepted and considered various filings by Uni-Select in the case, it ultimately ruled that Uni-Select lacked standing to object to Ms. Schlotzhauer's motion to re-open her bankruptcy case, as it was not a creditor and was unaffected by the distribution of her bankruptcy estate.

8

personal injury claim as $1,500,000 – the damages sought in her complaint in the personal injury action. The Bankruptcy Court re-appointed the trustee who had originally handled Ms. Schlotzhauer's bankruptcy and scheduled a hearing for January 7, 2014.

*Informing the Circuit Court of the Re-Opened Bankruptcy Case*

During a hearing before the Circuit Court on December 5, 2013, Ms. Schlotzhauer's counsel informed the Circuit Court of the re-opening of her bankruptcy case and the other developments in that case. He asked the Circuit Court to hold off ruling on Uni-Select's summary judgment motion until the court knew what the Bankruptcy Court would do. The Circuit Court then heard argument on whether the personal injury case should be dismissed because Ms. Schlotzhauer lacked standing. In regard to the standing argument, Ms. Schlotzhauer's counsel suggested that one option would be to permit the bankruptcy trustee to join the case as a co-plaintiff. The Circuit Court did not rule on any of the motions at the hearing, but indicated that it would issue a decision later.

*Simultaneous Rulings in the Bankruptcy Court and Circuit Court*

One month later, on January 8, 2014, the Bankruptcy Court and the Circuit Court both ruled on the motions pending before them. There is a certain mirror quality to those rulings – the Bankruptcy Court ruled in favor of Ms. Schlotzhauer's effort to amend her schedules to pursue her personal injury action and held that Uni-Select lacked standing to object to the amendment; the Circuit Court ruled in favor of Uni-Select's motion for summary judgment and held that Ms. Schlotzhauer lacked standing to pursue the personal injury action. It is evident that neither court was aware of the other court's action at the time it ruled.

9

More specifically, the Bankruptcy Court ruled that the exemption of Ms. Schlotzhauer's personal injury claim was allowed as of late November 2013,[6] noting that neither the re-appointed trustee nor any creditor had objected to allowance of the amended list of exempt property interests.[7] The Bankruptcy Court explicitly stated that it was not purporting to decide the summary judgment motion pending in the Circuit Court. Ms. Schlotzhauer immediately filed a motion asking the Bankruptcy Court to rule that the amended schedules were effective "*nunc pro tunc*" as of January 19, 2011 − the date that the bankruptcy case had been closed – effectively restoring ownership of the claim to her as of that date.

On the same day that the Bankruptcy Court ruled that Ms. Schlotzhauer's personal injury claim was exempt from the bankruptcy estate, the Circuit Court granted Uni-Select's motion for summary judgment based on her alleged lack of standing because the claim was part of the bankruptcy estate. In its opinion, the Circuit Court reasoned that Ms. Schlotzhauer lacked standing to pursue her claim because the bankruptcy trustee owned the claim. At the time it granted the motion the Circuit Court was apparently unaware of the Bankruptcy Court's ruling, as it referred to the bankruptcy trustee as the "current owner" of the personal injury claim. Although the court expressed the view that a stay of

---

[6] The Bankruptcy Court indicated that Ms. Schlotzhauer's claim "became allowed 31 days after the Debtor's Amended Schedule C was filed." The amended Schedule C had been filed on October 24, 2013.

[7] The Bankruptcy Court rejected Uni-Select's opposition to the amended schedules on the ground that Uni-Select was not a party in interest in the bankruptcy proceeding and lacked standing to object.

10

the personal injury action had a "foundation in common sense," it believed that the law did not allow for a stay.[8]   The court considered whether to dismiss the complaint without prejudice so that the bankruptcy trustee might pursue the claim, but concluded that "an amended complaint would be barred" by the statute of limitations and therefore awarded summary judgment in favor of Uni-Select.

On January 23, 2014, the Bankruptcy Court issued a supplemental order in which it determined that, under federal bankruptcy law, the "cause of action revested back to the Debtor and that revesting in law related back to the date of the filing of the Petition in this bankruptcy case on October 6, 2010." The Bankruptcy Court again specifically noted that it "has not and does not decide any motion now before the state court in the prosecution of the cause of action, including any motion to dismiss that may be pending in that court action."

*Motion to Alter or Amend Circuit Court Ruling*

In January 2014, Ms. Schlotzhauer filed a motion to alter or amend the Circuit Court judgment pursuant to Maryland Rule 2-534, and supplemented that motion with a copy of the Bankruptcy Court's order ruling that she had been re-vested with her personal injury claim effective October 6, 2010, as a matter of federal bankruptcy law.

---

[8] The filing of a bankruptcy petition normally effects an "automatic stay" of most other litigation involving a debtor. 11 U.S.C. §362(a). Neither party has addressed whether the re-opening of Ms. Schlotzhauer's bankruptcy case would result in a re-instatement of the automatic stay or, if not, whether the Bankruptcy Court had discretion to re-instate it, whether such a stay would apply to this action, and whether the Circuit Court should have considered those questions before granting summary judgment. In any event, given our disposition of the case, we need not resolve that issue.

11

After a hearing legal argument on the motion on February 25, 2014, the Circuit Court denied the motion in a written order two days later without explaining the reasons for its ruling.

*The Appeal*

Ms. Schlotzhauer noted a timely appeal to the Court of Special Appeals. The intermediate appellate court vacated the Circuit Court's judgment and remanded the case for further proceedings in the trial court. 224 Md. App. 72, 119 A.3d 121 (2015). The Court of Special Appeals held that the Circuit Court had erred in awarding summary judgment to Uni-Select and in not revising that ruling after being informed of the Bankruptcy Court's action re-vesting the claim in Ms. Schlotzhauer. The intermediate appellate court reasoned that, even if one concluded that Ms. Schlotzhauer did not own the claim when she filed suit, Maryland Rule 2-201 concerning "real party in interest" allowed her to prosecute the claim once it was re-vested in her. Because that rule incorporates the doctrine of "relation back," she would not be required to file a new complaint and could pursue the complaint that had been filed within the period of limitations. In any event, the intermediate appellate court held, the Bankruptcy Court's ruling that re-vested her with the claim well before the filing of the civil action meant that she owned the claim as of the filing of the complaint.

Uni-Select then petitioned this Court for a writ of *certiorari*, which we granted.

## II

## Discussion

Before us, Uni-Select raises two issues. First, it asserts that the Court of Special Appeals reviewed the Circuit Court's decision under too strict a standard of review. In its view, the Court of Special Appeals should have deferred to the Circuit Court's ruling on the motion to alter or amend the grant of summary judgment. Second, Uni-Select contends that, even if an appellate court reviews the Circuit Court's ruling without deference, the re-vesting of the claim in Ms. Schlotzhauer by the Bankruptcy Court did not relate back to the time she filed the complaint and thus any further prosecution of that claim is now barred by limitations.

### A. *Standard of Review*

Uni-Select argues that the intermediate appellate court – and now this Court – should apply a deferential "abuse of discretion" standard in reviewing the Circuit Court's decision in this case. Application of such a standard, in Uni-Select's view, would readily result in affirmance of the Circuit Court.

In our view, the standard of review in this case is more nuanced. It has often been said a circuit court's decision on a motion for reconsideration, such as a motion to alter or amend a judgment, is "ordinarily discretionary." *E.g., Wilson-X v. Department of Human Resources*, 403 Md. 667, 674-75, 944 A.2d 509 (2008). But, at the same time, courts "do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature." *Id.; cf. In re Adoption/Guardianship No. 93321055/CAD*, 344 Md. 458, 475-76, 687 A.2d 681 (1997) (on appeal of denial of a

13

motion to revise under Rule 2-535(b), "the only issue before the appellate court is whether the trial court erred as a matter of law or abused its discretion in denying the motion").

It is also notable that, as the introductory clause of Rule 2-534 indicates, a motion to alter or amend under that rule concerns a case that has been "decided by the court."[9] A case may be decided by the court when there is a bench trial in which the court is the factfinder. A case may also be decided by the court when, as in this case, the court awards summary judgment to a party as a matter of law. Thus, a circuit court's decision on a motion to alter or amend under Rule 2-534 may depend, in some cases, on that court's assessment of the facts or it may depend entirely on the court's assessment of the legal principles that apply to the particular case. If the court's ruling is rooted in its role as a factfinder, an appellate court typically would accord its decision substantial deference. *E.g., Falls Road Community Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 135, 85 A.3d 185 (2014). If the circuit court's decision is based on an application of legal principles, an

---

[9] The rule states:

> **Rule 2-534. Motion to alter or amend a judgment – Court decision.**
> In an action decided by the court, on motion of any party filled within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment. A motion to alter or amend a judgment may be joined with a motion for new trial. A motion to alter or amend a judgment filed after the announcement or signing by the trial court of a judgment but before entry of the judgment of the docket shall be treated as filed on the same day as, but after, the entry on the docket.

14

appellate court does not accord the circuit court any special deference. *E.g., Cunningham v. Feinberg*, 441 Md. 310, 322, 107 A.3d 1194 (2015).

Thus, an error in applying the law can constitute an abuse of discretion, even in the context of a motion for reconsideration made pursuant to Maryland Rule 2-534. A court that fails to rectify a judgment based on a misunderstanding of the law applicable to the case or the procedural posture of the case, especially when that error is brought to its attention in a timely manner, abuses its discretion.[10] *E.g., Williams v. Housing Authority of Baltimore City*, 361 Md. 143, 153, 760 A.2d 697 (2000) (circuit court abused its discretion in failing to grant motion under Rule 2-534 upon being informed that judgment dismissing case was based on mistaken understanding of the procedural posture of case and on a party's failure to appear when the party was not informed by the court of the hearing date); *Triplin v. Jackson*, 326 Md. 462, 464, 605 A.2d 618 (1992) (circuit court abused its discretion when it denied a motion for reconsideration, which was supported by uncontradicted affidavits that plaintiffs had not received notice of trial date); *United States Life Ins. Co. v. Wilson*, 198 Md. App. 452, 464, 18 A.3d 110 (2011) (applying *de novo* standard of review in appeal of circuit court's denial of motion to reconsider grant of summary judgment).

---

[10] Of course, as the Court of Special Appeals pointed out, a motion to alter or amend under Rule 2-534 is not an occasion for a party to make arguments that it neglected to make initially. 224 Md. App. at 85. A circuit court does not abuse its discretion when it declines to entertain a legal argument made for the first time in a motion for reconsideration that could have, and should have, been made earlier, and consequently was waived.

In this case, the ruling to be reviewed is the Circuit Court's order, made without explanation, denying Ms. Schlotzhauer's motion to alter or amend the award of summary judgment. The Circuit Court had awarded summary judgment based on its understanding that the bankruptcy trustee was the legal owner of the cause of action. Having been informed to the contrary and that the matter had taken a 180-degree turn in the Bankruptcy Court, presumably the Circuit Court did not simply ignore the legal status of the claim – that surely would be an abuse of discretion.

Rather, we presume that the Circuit Court decided, as a matter of law, that the fact that the Bankruptcy Court had re-vested Ms. Schlotzhauer with her claim as of October 6, 2010 did not provide her with a viable claim for purposes of Maryland law as of that date and did not allow her to continue to prosecute that claim in State court. Accordingly, it perceived no reason to reconsider its award of summary judgment, which was itself a legal determination. Thus, giving the Circuit Court the benefit of the doubt as to the basis of its decision, it made a legal determination – the kind that an appellate court typically reviews without deference to a circuit court. In our view, the Court of Special Appeals did not apply an incorrect standard of review when it examined whether the Circuit Court decision was legally correct.

**B.    *Whether the Motion to Alter or Amend Should Have Been Granted***

As the Court of Special Appeals noted, the Circuit Court's ruling on summary judgment was based on an incorrect understanding of the legal status of Ms. Schlotzhauer's claim in the bankruptcy proceedings. The court mistakenly believed that the claim "currently" belonged to the bankruptcy trustee and that Ms. Schlotzhauer lacked standing

16

for that reason when it awarded summary judgment. In fact, on that same day, the claim was re-vested in Ms. Schlotzhauer and, shortly thereafter, the Bankruptcy Court determined that she owned the claim as of October 6, 2010. By the time the Circuit Court was asked to reconsider its ruling, the basis for the conclusion that she lacked standing – that she had been divested of the claim by virtue of the Bankruptcy Court proceedings – had evaporated.

After being advised of the re-vesting of the claim in Ms. Schlotzhauer effective as of October 6, 2010, for purposes of federal bankruptcy law, the Circuit Court declined to reconsider its ruling. Although the Circuit Court did not explain that decision, it presumably concluded that the Bankruptcy Court's action retroactively re-vesting the claim was either without legal effect for purposes of Maryland law or that, to the extent it was, Ms. Schlotzhauer would have to file a new complaint outside the period of limitations. It is that legal conclusion that we now review. In our view, that decision was legally incorrect, whether viewed in the posture of the case at the time the Circuit Court decided the motion to alter or amend or at the time it granted summary judgment.

1.     Status of Claim When the Motion to Alter or Amend was Decided

*Retroactive Vesting of the Claim in the Bankruptcy Case*

As recounted above, by the time the Circuit Court considered the motion under Rule 2-534 to alter or amend, Ms. Schlotzhauer's bankruptcy case had been re-opened, and the Bankruptcy Court had held that her personal injury claim was exempt from the bankruptcy estate, that the exemption related back to the filing of the bankruptcy petition, and that she was re-vested with her claim as of that date. Thus, as far as the bankruptcy proceedings

17

were concerned, Ms. Schlotzhauer was the owner of her personal injury claim as of October 6, 2010 – well before the filing of the complaint in this case.[11] The Bankruptcy Court was careful to state that it was not purporting to decide any motions pending before the Circuit Court. It properly recognized that the legal effect of the retroactive re-vesting of the claim on a State court action was a matter of Maryland law to be decided by the State courts. But the Bankruptcy Court's determination is not without significance in Maryland law.

*Effect of Retroactive Re-Vesting on the State Court Action*

Uni-Select argues that, even if we recognize the re-vesting of Ms. Schlotzhauer's claim as a result of the Bankruptcy Court's orders, her complaint was a "nullity" as a result of the divesting effect of the Bankruptcy Court proceeding. Therefore, it argues, she would be required to re-file her complaint upon re-vesting, but that is foreclosed now that the statute of limitations has expired.[12]

---

[11] Uni-Select spends several pages of its brief arguing that an exemption allowed when a bankruptcy case is re-opened, unlike abandonment of a claim by a bankruptcy trustee, does not relate back to the filing of the bankruptcy case. *See* Petitioners' Brief at 11-14; Petitioners' Reply Brief at 7-10. In effect, Uni-Select asks us to overrule the Bankruptcy Court's determination that the exemption of Ms. Schlotzhauer's personal injury claim related back to October 2010 as a matter of federal bankruptcy law. We decline to do so. As far as we can discern from the record, Uni-Select did not ask the Bankruptcy Court to reconsider its decision or pursue any appeal in the federal forum. While it is our task to decide the effect of the Bankruptcy's Court's re-vesting of the claim in the State court proceeding, it is not our role to overrule that decision any more than it would be our prerogative to overrule the divestiture of a claim by virtue of a bankruptcy proceeding.

[12] Uni-Select cites two bankruptcy-related decisions that held that a plaintiff who failed to list a cause of action in a bankruptcy petition lost his standing to assert that claim. Unlike this case, neither of those cases involve a claim for personal injuries that is typically exempted from a bankruptcy estate. More importantly, unlike this case, in neither of those cases was the bankruptcy case re-opened and the claim re-vested in the plaintiff by the

18

Uni-Select does not explain why the re-vesting of the claim did not render the divesting itself a "nullity." Moreover, Uni-Select's argument resolutely ignores the fact that the Bankruptcy Court vested Ms. Schlotzhauer with the claim retroactively – more than two years before she filed suit. Uni-Select thus asks this Court to look to the operation of bankruptcy law when those proceedings initially vested Ms. Schlotzhauer's personal injury claim in the bankruptcy trustee effective October 6, 2010, but to avert its eyes from

Bankruptcy Court as of the date of the filing of the bankruptcy petition. *See Bowie v. Rose Shanis Financial Services, LLC*, 160 Md. App. 227, 862 A.2d 1102 (2004) (plaintiff asserted various causes of action related to repossession of his car, did not list these claims in his bankruptcy filings, and never returned to bankruptcy court to seek to have the case re-opened before the trial court granted summary judgment); *Gonyo v. Midland Funding, LLC*, 2012 WL 2564711 (D. Md. 2012) (plaintiff claimed that defendant violated Fair Debt Collections Procedures Act, failed to list claim in bankruptcy petition; although bankruptcy court re-opened the bankruptcy proceeding, the claim was not exempted or retroactively re-vested in plaintiff).

In arguing that the complaint filed in this case was a "nullity," Uni-Select refers not to cases involving personal injury claims or bankruptcy, but rather actions brought by defunct corporations. In those cases, the courts described the filing of the complaint as a "nullity" because the named plaintiffs had each lost the capacity to sue by operation of the Maryland General Corporation Law. *See Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 857 A.2d 1095 (2004); *Stein v. Smith*, 358 Md. 670, 751 A.2d 504 (2000); *Tri-County Unlimited, Inc. v. Kids First Swim School, Inc.,* 191 Md. App. 613, 993 A.2d 146 (2010). As this Court noted, the Maryland statute did not provide for retrospective revival of such a claim, even if the corporation's charter was later revived. *Dual*, 383 Md. at 166.

Finally, Uni-Select also cites a number of cases applying statutes of limitations, such as *Walko Corp. v. Burger Chef Systems, Inc*., 281 Md. 207, 378 A.2d 1100 (1977). In that case, a litigant attempted to intervene in an existing action, but was rebuffed on the basis that its allegations were "entirely unrelated" to those in the pending suit. When the litigant later attempted to bring an independent action against the same parties after the period of limitations expired, this Court held that the failed intervention attempt in the earlier action was a "procedural nullity" as to tolling the period of limitations for the separate action. As is evident, that case bears little resemblance to the situation in this case, which does not involve a failed intervention motion or allegations unrelated to the original action.

19

the bankruptcy proceedings when they re-vested that claim in Ms. Schlotzhauer, also effective October 6, 2010. It is not clear to us – and Uni-Select has not articulated a reason – why Maryland law should recognize the divesting of a claim on a particular date as a result of proceedings in Bankruptcy Court, but should not recognize the Bankruptcy Court's restoration of that claim as of the same date as a result of the same proceedings.

We can think of no good policy reason to adopt such a contradictory approach. Indeed, the policy reasons underlying the standing requirement, limitations periods, and bankruptcy all counsel in favor of treating the determinations of the Bankruptcy Court consistently. The complaint in the State court case was filed within the period of limitations and the defendants received the requisite notice of the action within the time specified by Maryland law. The named plaintiff was the individual allegedly injured in the incident recounted in the complaint and, but for the bankruptcy proceeding, there would be no question as to her standing. Since the time the complaint was filed, there has been no change in the cause of action asserted or in the facts alleged to support that cause of action. The interests of the creditors in the bankruptcy case – and any interest they might have in this action – were legally the concern of the Bankruptcy Court and have presumably been factored into the Bankruptcy Court's decision. Although the Bankruptcy Court properly did not purport to dictate the result in the State court action, we see no reason not to give effect to its retroactive vesting of Ms. Schlotzhauer's claim in assessing her standing to bring that claim under State law.

As the Court of Special Appeals noted, Ms. Schlotzhauer's situation bears some similarity to that of the plaintiff in *Pacific Mortgage and Investment Group, Ltd. v. Horn*,

100 Md. App. 311, 641 A.2d 913 (1994). In that case, two lenders started foreclosure proceedings against Ms. Horn after she defaulted on a mortgage. She filed for bankruptcy and sued the lenders for alleged violations of the Maryland Consumer Loan Law, listing the lawsuit as an asset in her bankruptcy schedules. 100 Md. App. at 317. After the circuit court awarded summary judgment in favor of Ms. Horn, the lenders appealed. They argued that the lower court should have dismissed the claim on the grounds that the claim belonged to the bankruptcy estate and that Ms. Horn lacked standing. *Id.* at 319. The Court of Special Appeals rejected that argument, noting that the bankruptcy case had closed in the interim without any effort by the trustee to assert the claim. *Id.* In the court's view, the trustee was deemed to have abandoned the claim and, as a result, the right to pursue the claim was retroactively restored to Ms. Horn. *Id.* at 319-21.

As noted above, in *Horn*, the appellate court concluded that the trustee must have abandoned the claim and, based on federal case law, construed that abandonment to effect a retroactive re-vesting of the claim in Ms. Horn under bankruptcy law. The Maryland court accepted what it believed to be the result under federal bankruptcy law and applied it to the State civil action to affirm the conclusion that Ms. Horn had the requisite standing as of the date she filed her complaint. *Id.* (citing *Barletta v. Tedesci*, 121 B.R. 669, 673-74 (N.D.N.Y. 1990)). In this case, our task is easier. We need not construe anything under the bankruptcy law. The Bankruptcy Court itself has held that Ms. Schlotzhauer's claim was re-vested in her effective October 6, 2010.

In our view, the Circuit Court, once informed of the re-vesting of Ms. Schlotzhauer's claim in the Bankruptcy Court as of a date well before the filing of her

21

complaint, should have decided, as a matter of Maryland law, that she owned the claim as of the date she filed her complaint and, accordingly, that she had standing.

2.    Status of the Claim When the Summary Judgment Motion was Decided

The result is no different if we view the Circuit Court's decision from its perspective when it awarded summary judgment to Uni-Select. Even if one views the matter from that (inaccurate) perspective, the Circuit Court still committed a legal error. At that time, the court was aware that, at a minimum, the bankruptcy case had been promptly re-opened, that the bankruptcy schedules had been amended to include Ms. Schlotzhauer's personal injury claim, and that the bankruptcy trustee had been re-appointed. The Circuit Court believed (mistakenly, it turned out) that the bankruptcy trustee remained the "current" owner of the claim and thus would be the real party in interest in this action. At the hearing on the summary judgment motion, Ms. Schlotzhauer's counsel proposed that the trustee be added to the action as a plaintiff. The Circuit Court never addressed that proposal, although its award of summary judgment implicitly rejected it. The Circuit Court granted summary judgment in favor of Uni-Select on the supposition that the bankruptcy trustee would have to file a new complaint – a complaint that would be barred by limitations.

Even if the Bankruptcy Court had not ultimately re-vested Ms. Schlotzhauer with her claim and the bankruptcy trustee had remained the owner of the claim, or if the re-vesting had not been made retroactive, it was inappropriate to dispose of the case by summary judgment on the basis of limitations. As the Court of Special Appeals ably

22

explained in its opinion,[13] the Maryland rule concerning the "real party in interest" and its incorporation of the doctrine of relation back would operate to substitute a plaintiff with standing and to toll limitations for that plaintiff.

*Real Party in Interest*

Maryland Rule 2-201 provides, in pertinent part, that "[e]very action shall be prosecuted in the name of the real party in interest …."[14] The rule plainly contemplates a situation in which an action is initially filed by someone who is not the real party in interest. The penultimate sentence of the rule provides "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest." Thus, the rule expressly requires that, when an action is not commenced by the proper plaintiff,

---

[13] *See* 224 Md. App. at 89-96.

[14] The rule states in full:

> Every action shall be prosecuted in the name of the real party in interest, except that an executor, administrator, personal representative, guardian, bailee, trustee of an express trust, person with whom or in whose name a contract has been made for the benefit of another, receiver, trustee of a bankrupt, assignee for the benefit of creditors, or a person authorized by statute or by rule may bring an action without joining the persons for whom the action is brought. When a statute so provides, an action for the use or benefit of another shall be brought in the name of the State of Maryland. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for joinder or substitution of the real party in interest. The joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

a circuit court must provide a reasonable opportunity to allow the real party in interest to join the action as a co-plaintiff or to take the place of the plaintiff who commenced the action before the court may terminate the action. *See South Down Liquors, Inc. v. Hayes*, 323 Md. 4, 8, 590 A.2d 161 (1991); Paul V. Niemeyer, et al., Maryland Rules Commentary (3d ed. 2004) at 134. If the real party in interest joins or is substituted as a plaintiff in the case, then the "real party in interest steps into the shoes of the plaintiff who commenced the action." Niemeyer, *supra*, at 134.[15]

This interpretation is consistent with the underlying policy that "[t]he Maryland Rules of Procedure should, of course, be liberally construed so as to effectuate their purposes and to do justice between the parties." *See Miller v. Talbott*, 239 Md. 382, 390, 211 A.2d 741 (1965); *see also* Maryland Rule 1-201(a) ("These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay.").

---

[15] A treatise on Maryland civil procedure has noted that the "deliberations of the drafters ... indicate an intent that substitution of the real party in interest be permitted by amendment with a liberality not characteristic generally of amendments changing parties." John A. Lynch, Jr. & Richard W. Bourne, *Modern Maryland Civil Procedure*, §4.2(b) (2d ed. 2004). Whether the rule should allow for substitution of a wholly new party – as opposed to simply joinder of a new party in a case with an existing party with standing – was a matter of debate when Rule 2-201 was considered by the Court's Standing Committee on the Rules of Practice and Procedure in 1979. During that meeting, the Rules Committee discussed whether the rule should allow for substitution, in addition to joinder. The Committee rejected a proposed amendment to eliminate that possibility. *See* Minutes, Standing Committee on Rules of Practice and Procedure (May 11-12, 1979) at 14 ("Judge Proctor's motion to eliminate the word 'or substitute' in the second and last sentence was seconded by Mr. Rodowsky, but failed to carry on a vote of 4 in favor to 9 opposed.").

As the source note to Rule 2-201 indicates, it was patterned after the 1966 version of Rule 17 of the Federal Rules of Civil Procedure. *See also* Minutes, Standing Committee on Rules of Practice and Procedure, May 11-12, 1979 at 13-14. Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."[16] According to the federal Advisory Committee notes, this provision of Rule 17 was added "in the interests of justice" and is "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." Thus, the federal rule contemplates that a party that is not the "real party in interest" may bring an action and that the proper party can be substituted later in certain circumstances. Under that rule, the federal courts have directed that bankruptcy trustees be substituted as plaintiffs in various types of actions when a debtor failed to list the claim. *See, e.g., Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1292 (11th Cir. 2003); *Marshall v. Honeywell Technology Solutions. Inc.*, 675 F.Supp.2d 22, 26 (D.D.C. 2009); *Canterbury v. Federal-Mogul Ignition Co.*, 483 F.Supp.2d 820, 827 (S.D. Ia. 2007); *Aldridge v. United States*, 59 Fed. Cl. 387, 390 (2004). A bankruptcy trustee is permitted to continue to prosecute the claim even when the statute of limitations expired between the original filing of the complaint and the substitution of the trustee. *E.g., Canterbury, supra.*

---

[16] According to the Advisory Committee notes to the federal rule, only non-substantive stylistic changes have been made to Rule 17(a) since 1966.

One is a "real party in interest" with respect to a claim if that person has the right to assert the claim. Ms. Schlotzhauer initially had the right to assert her personal injury claim against Uni-Select. As a matter of federal bankruptcy law, her initial failure to list the claim in her bankruptcy petition meant that it became part of her bankruptcy estate subject to the control of the bankruptcy trustee. Thus, the bankruptcy trustee became the real party in interest at that juncture.

In the absence of the Bankruptcy Court's action re-vesting Ms. Schlotzhauer with the claim, the bankruptcy trustee would have remained the real party in interest. Once the Circuit Court believed that the bankruptcy trustee was the real party in interest, it should have allowed a "reasonable opportunity" under Rule 2-201 for the bankruptcy trustee to be substituted for Ms. Schlotzhauer as plaintiff.[17] And, once the Circuit Court realized that the claim had been exempted from the bankruptcy estate and restored to Ms. Schlotzhauer,

---

[17] This conclusion is consistent with this Court's decision in *Adams v. Manown*, 328 Md. 463, 615 A.2d 611 (1992). In *Adams*, the plaintiff brought a contract claim for damages but failed to list the claim on the schedules accompanying his bankruptcy petition. 328 Md. at 469. Following a trial, the jury returned a verdict awarding damages to the plaintiff. *Id.* at 472. Although the case initially came to the Court of Appeals on a different legal issue, this Court noted during its consideration of the appeal that the bankruptcy trustee was the real party in interest because the claim belonged to the bankruptcy estate. *Id.* at 477. Rather than dismiss the case, the Court allowed a reasonable opportunity for the circuit court to permit substitution of the bankruptcy trustee as the real party in interest under Rule 2-201 or, in the event that the bankruptcy trustee decided not to pursue the judgment on behalf of the estate, for the circuit court to treat the plaintiff as the real party in interest. *Id.* at 481.

Uni-Select argues that *Adams* is of little persuasive value because it involved a case that had already been litigated to a judgment. Although those circumstances were unusual, in applying Maryland Rule 2-201, the Court obviously contemplated that the real party in interest would simply step into the shoes of the party that brought the action without any need to re-commence the action.

26

she would have succeeded the trustee as the real party in interest and could be substituted for the trustee under Rule 2-201. These successive substitutions are straightforward applications of Rule 2-201. The critical question, which Uni-Select correctly focuses on, is whether these substitutions of the real party in interest would relate back to the filing of the complaint, as limitations had otherwise expired.

*Relation Back Doctrine*

The last sentence of Maryland Rule 2-201 provides that, when the real party in interest is substituted for the original plaintiff, "[t]he … substitution shall have the same effect as if the action had been commenced in the name of the real party in interest Compliance with the statute of limitations is thus to be measured from the original filing of the complaint.

This Court has applied the relation back doctrine liberally under Rule 2-201 and related rules. *See, e.g., Crowe v. Houseworth*, 272 Md. 481, 325 A.2d 592 (1971); *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 69-70, 706 A.2d 1060 (1998). In *Crowe*, the plaintiff, who was one of several siblings who owned certain land as joint tenants, brought a trespass action against the defendant with respect to that property. The defendant moved to dismiss the action on the ground that it had not been brought by all the joint tenants. The plaintiff then sought to join his siblings as plaintiffs pursuant to former Maryland Rule 320 as necessary parties, but the circuit court dismissed the case, apparently on the ground that the period of limitations had expired in the meantime and their joinder would not relate back to the filing of the complaint. On appeal, this Court held that the circuit court abused its discretion. 272 Md. at 483. The Court reasoned that the defendant "can in no way be

prejudiced by the appearance of additional parties who could have been made parties plaintiff or defendant when the action was initially brought." *Id.* at 485. The Court further noted that "neither the gravamen of the action nor the measure of damages will in any way be affected" by their joinder. *Id.* The Court adopted the Justice Holmes' view that "relation back" should be permitted "when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct," because under those circumstances, "the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied." *Id.* at 489 (quoting *New York Central & H.R.R. Co. v. Kinney*, 260 U.S. 340, 346 (1922)).

Subsequent to *Crowe*, this Court adopted Rule 2-201 which broadened the relation back doctrine to allow for the substitution, as well as joinder, of a party to relate back to the filing of the original complaint.[18] In other words, a plaintiff who originally filed the claim need not remain as a plaintiff on that claim in order for the new party to have the benefit of the relation back doctrine, so long as the rationales for application of the doctrine – *e.g.*, notice of the claim and operative facts – pertain.

An example of substitution appears in *Zappone, supra*. In that case, an individual plaintiff, the sole shareholder of a corporation, initially filed a complaint on his own behalf

---

[18] When Rule 2-201 was under consideration by the Rules Committee, it was noted that it effected a change in the operation of the relation back doctrine under Maryland law. *See* Minutes, Standing Committee on Rules of Practice and Procedure (March 23, 1979) at 14 ("Mr. Rodowsky stated that under Maryland Rule 320 you cannot now substitute a new party and relate back, and that the last sentence of the proposed rule in effect abolishes Maryland Rule 320(b)(1), which requires that some one of the parties remain.")

28

alleging fraud, misrepresentation and negligence by the defendant insurance company and related parties. The plaintiff later amended the complaint, after the expiration of the statute of limitations, to include related claims by his company against the insurer. The circuit court dismissed the amended claims in which the company was the sole plaintiff on the basis of limitations. 359 Md. at 56-57. This Court reversed that dismissal, holding that the claims asserted by the company in the amended complaint related back to the original complaint. *Id.* at 68-71. The Court noted that the factual allegations underlying those counts had all been included in the original complaint and the operative facts remained the same. *Id*. at 68-69. The amended complaint merely substituted the company for the individual plaintiff as to the particular allegations.

In this case, there is no good reason not to apply the relation back doctrine. Uni-Select had notice of the operative facts of the cause of action within the period of limitations. Ms. Schlotzhauer has not alleged any new causes of actions or different facts. Uni-Select has not pointed to any prejudice it would suffer, other than that the complaint would not be dismissed and that Ms. Schlotzhauer would be able to pursue the claim that she had filed within the period of limitations.[19]

Uni-Select argues that the relation back doctrine should not apply because there are "no amendments being considered. There are no new claims or legal theories. There are

_____

[19] This contrasts with the situation in *Priddy v. Jones*, 81 Md. App. 164, 170, 567 A.2d 154 (1989), *cert. denied*, 319 Md. 72, 570 A.2d 864 (1990), in which the Court of Special Appeals held that the plaintiff's amended complaint did not "relate back" because it asserted a new cause of action based on new factual allegations.

no new parties." But those circumstances simply point to the fact that it suffers no prejudice or surprise from the operation of the relation back doctrine in this case. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 20 (2nd Cir. 1997) ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.").

### III

### Conclusion

For the reasons set forth above, we hold that:

1.     The Circuit Court abused its discretion in denying Ms. Schlotzhauer's motion to alter or amend the award of summary judgment in favor of Uni-Select because the Circuit Court failed to take in account the legal effect of the Bankruptcy Court's decision to re-vest Ms. Schlotzhauer with her claim against Uni-Select.

2.     As a result of the Bankruptcy Court's decision to re-vest Ms. Schlotzhauer with her claim against Uni-Select effective October 6, 2010, Ms. Schlotzhauer has standing to prosecute the complaint that she filed on December 27, 2012 within the period of limitations.

3.     Even if the retroactive nature of the Bankruptcy Court's order were ignored, under Maryland Rule 2-201, the Circuit Court should have allowed a reasonable time for the real party in interest – first, the bankruptcy trustee and later, Ms. Schlotzhauer – to be substituted as plaintiff. Under that rule, those substitutions would have related back to the initial filing of the claim within the period of limitations.

30

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**